# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARTA RIVERA,**

            **Plaintiff,**

v.                                           **Case No:  6:12-cv-232-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

            **Defendant.**

_____

# MEMORANDUM OF DECISION

Marta Rivera (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her applications for Social Security disability benefits and supplemental security benefits (hereafter "Applications"), which alleged a disability onset date of January 2, 2007.  Doc. No. 1.  For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I.    MEDICAL AND OPINION EVIDENCE

### A.  Daniel A. Nieves-Quinones, M.D.

On February 20, 2009, Daniel A. Nieves-Quinones, M.D., Claimant's treating physician, conducted his initial consultation with Claimant.  R. 244-45.  Dr. Nieves-Quinones' physical examination revealed essentially normal results.  R. 244-45.  Dr. Nieves-Quinones indicated that Claimant "likely has cervicogenic migraine secondary to DJD with transformed chronic daily headaches."  R. 245.[1]  Dr. Nieves-Quinones recommended Claimant eliminate caffeine and nicotine, maintain regular eating and sleeping patterns, and begin a good exercise program.  R.

---

[1] DJD refers to degenerative joint disease.

245.   Although Dr. Nieves-Quinones indicated these lifestyle changes would likely be more effective than medication, Dr. Nieves-Quinones also prescribed Topamax to treat Claimant's headaches.  R. 245.

On March 3, 2009, Dr. Nieves-Quinones conducted an electromyography with nerve conduction study.  R. 239-40.  Dr. Nieves-Quinones indicated the results of the nerve conduction study were normal, but the electromyography revealed polyphasia, decreased recruitment pattern and decreased interference pattern in the right pronator teres and right extensor indicis proprius. R. 239.  Dr. Nieves-Quinones noted the results were "consistent with a mild chronic right C7 radiculopathy."  R. 240.

On June 4, 2010, Dr. Nieves-Quinones documented Claimant's complaints of continued neck pain, as well as recent back pain that radiates down her left lower extremity.  R. 360.  Dr. Nieves-Quinones noted that an MRI of Claimant's lumbar spine showed some degenerative changes.  R. 360.  Dr. Nieves-Quinones assessed Claimant with degeneration of the thoracic or thoracolumbar intervertebral disc and brachial neuritis or radiculitis.  R. 361.  Dr. Nieves-Quinones indicated he would obtain an electromyography nerve conduction study of Claimant's left lower extremity.   R. 361.   On June 18, 2010, Dr. Nieves-Quinones conducted the electromyography nerve conduction study and indicated the results were normal, showing no evidence of neuropathy, radiculopathy or myopathy.  R. 355.

**B.  Alvan Barber, M.D.**

On June 27, 2010, Alvan Barber, M.D., conducted a consultative examination of Claimant on behalf of the Commissioner.  R. 370-74.  Dr. Barber indicated that Claimant stated she cannot work due to symptoms from her breast cancer.  R. 370.  Dr. Barber's examination revealed largely normal results, except that Claimant tested positive for weakness, chronically

occurring muscle and joint pain and discomfort, and cervical spasms with pain.  R. 371-72.  Dr. Barber also noted that Claimant had numbness and tingling in her right upper extremity.  R. 373. Dr. Barber opined that Claimant has the functional ability to walk, stand and sit for reasonable periods of time.  R. 374.  Dr. Barber indicated that Claimant cannot kneel, crawl, squat, push and pull with her right upper extremity or lift and carry heavy objects with her right upper extremity. R. 374.[2]  Dr. Barber opined that Claimant can use her left upper extremity.  R. 374.

**C.  Richard Wall, M.D.**

On August 18, 2010, Richard Wall, M.D., a non-examining doctor, completed a physical residual functional capacity assessment.  R. 379-86.  Dr. Wall provided a primary diagnosis of breast cancer and secondary diagnoses of cervical degenerative joint disease and cervicogenic migraines.  R. 379.  Dr. Wall opined that Claimant can occasionally lift and/or carry twenty pounds occasionally and ten pounds frequently.  R. 380.  Dr. Wall indicated that Claimant is limited to lifting five pounds with her right arm and is limited in pushing and pulling with her upper extremities.  R. 380.

Dr. Wall opined that Claimant can stand, sit and/or walk about six hours in an eight-hour workday.  R. 380.  Dr. Wall opined that Claimant can never climb ladders, ropes or scaffolds and can frequently balance.  R. 381.  Dr. Wall indicated that Claimant can occasionally climb ramps/stairs, stoop, kneel, crouch and crawl.  R. 381.  Dr. Wall found that Claimant is limited to occasional to moderate overhead reaching with her right arm, but otherwise has no limitations with handling, fingering or feeling.  R. 382.  Dr. Wall opined that Claimant has no visual or communicative limitations.  R. 382-83.  The only environmental limitation Dr. Wall found was that Claimant should avoid even moderate exposure to hazards.  R. 383.

---

[2]  In the "Gait and station" portion of his report, Dr. Barber indicates that Claimant can squat.  R. 373.  However, in the "Functional ability" portion of his report, Dr. Barber states that Claimant "cannot . . . squat."  R. 374.

II.     **ADMINISTRATIVE PROCEEDINGS**

On March 8, 2010, Claimant filed her Applications.  R. 117-30.  The Applications were denied initially and on reconsideration.  R. 50-51, 60-61.  Claimant requested a hearing before an administrative law judge (hereafter "ALJ") and the hearing was held on August 24, 2011.  R. 30-49, 82.  At the start of the hearing, the ALJ informed Claimant that "you can represent yourself, but I need to ensure that you understand that you have the right to a representative."  R. 30.  Claimant stated, "I understand" and indicated that she was represented by an attorney until the attorney withdrew.  R. 30.

Claimant testified that her past full-time employment consisted of working as an accounting clerk, accounts payable clerk, cash office clerk, assistant manager and manager.  R. 33-35.  Claimant stated that she had breast cancer that resulted in a mastectomy and plastic surgery.  R. 37.  Claimant indicated that since 2003, she has had headaches with pain starting from the back of her neck and shooting down her right arm.  R. 36, 38.  Claimant stated that Dr. Nieves-Quinones prescribed Tramadol for the headaches.  R. 36.  Claimant indicated that she can only raise her right arm to shoulder level and must use both hands to grasp a jar.  R. 39.  Claimant testified that if she walks a lot her back locks up with shooting pain and she starts limping after walking a half an hour.  R. 39-40.  Claimant indicated that she does not use a cane or other assistive device.  R. 40.  Claimant further stated that she is having a lot of pain in her abdominal area after her breast reconstruction surgery.  R. 40. Claimant testified that she can only sit about an hour before needing to get up or move around.  R. 41.  Claimant stated that she sometimes cooks and folds laundry, but her daughter and husband perform the other household chores.  R. 42.

The vocational expert classified Claimant's past work as being accounting payable clerk, bank assistant manager, cash office clerk and retail assistant manager.  R. 44-46.  The ALJ asked the vocational expert whether a person of Claimant's age, education and work experience could perform any of Claimant's past relevant work with the following additional limitations:  low-semiskilled work; can lift and carry no more than ten (10) pounds; can stand two hours; can sit six hours; should avoid frequent climbing and descending of stairs; should avoid pushing and pulling motions with her right upper and both lower extremities; has manual dexterity, bilateral manual dexterity for gross and fine manipulation, and gross manipulation with the left upper extremity; cannot climb; and can occasionally balance, stoop, crouch, kneel and crawl.  R. 47-48. The vocational expert testified that such a person could perform Claimant's past work as a cash office clerk.  R. 48.  The vocational expert testified that if the hypothetical person missed four or more unscheduled days of a work per month the person would not be able to work.  R. 48.

On September 7, 2011, the ALJ issued his decision.  R. 13-22.  The ALJ found that Claimant suffers from the severe impairments of history of breast cancer, degenerative cervical disc disease and cervicogenic migraines.  R. 16.  The ALJ determined that Claimant has the residual functional capacity (hereafter "RFC") to perform sedentary work with the following restrictions:  can lift and carry ten (10) pounds occasionally; can stand and/or walk two hours in an eight-hour workday; can sit six hours in an eight-hour workday; should avoid frequent climbing and descending of stairs; should avoid pushing and pulling motions with her right upper and both lower extremities; can perform activities requiring bilateral manual dexterity for gross and fine manipulation with her left upper extremity; cannot climb; and can occasionally balance, stoop, crouch and crawl.  R. 16.

In reaching his RFC finding, the ALJ summarized the findings contained in Dr. Nieves-Quinones' treatment notes, Dr. Barber's consultative examination and Dr. Wall's physical RFC assessment. R. 17-20.  In regard to the medical opinion evidence, the ALJ stated:

> The undersigned has considered the opinions of Dr. Richard Wall and finds his opinions are not entirely supported by the objective medical evidence and findings set forth hereinabove in detail, nor are they consistent with the treatment record or the claimant's functioning as described above.  Dr. Wall's opinions regarding the claimant's ability to lift and carry seem overly optimistic in light of the objective medical findings, but his opinion that the claimant could occasionally climb ramps or stairs, stoop, kneel, crouch or crawl; no climbing ladders, stairs and scaffolds; push and pull limitations; and limited in overhead reaching with right upper extremity is persuasive.  As such, the undersigned gives only some weight to Dr. Wall's opinions.  Considering all of the evidence, a more restrictive residual functional capacity assignment is adopted.  The undersigned determined that sedentary exertion was more appropriate considering the claimant's medical history of breast cancer, degenerative cervical disc disease, and cervicogenic migraines.

R. 20.  Thus, the ALJ gave Dr. Wall's RFC opinion some weight because some of his findings were not supported by the objective medical evidence or claimant's functioning as found by the ALJ.  In light of this RFC and the vocational expert's testimony, the ALJ found that Claimant can perform her past relevant work as a cashier office clerk.  R. 21.  As a result, the ALJ determined that Claimant is not disabled.  R. 21.

## III.   LEGAL STANDARDS

### A.  THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id.* (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The

District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

**IV.   ANALYSIS**

Claimant raises four issues on appeal. First, Claimant argues that the ALJ failed to develop a full and fair record. Doc. No. 17 at 7-8. Second, Claimant contends that the ALJ erred in failing to state the weight given to Dr. Barber's opinion. Doc. No. 17 at 8-10. Third, Claimant asserts that the ALJ erred by failing to state the weight given to Dr. Nieves-Quinones' opinion and failing to account for his opinion in determining Claimant's RFC. Doc. No. 17 at 11-13. Fourth, Claimant argues that the ALJ failed to elicit testimony or consider the side effects of her medication. Doc. No. 17 at 13-14.

**A.  The ALJ Developed a Full and Fair Record.**

Social security proceedings are inquisitorial, not adversarial, and the ALJ has a duty to investigate facts and develop arguments for granting and denying benefits. *Sims v. Apfel*, 530 U.S. 103, 110 (2000). Relatedly, the ALJ always has a basic duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). However, claimants have the burden of proving disability and must produce evidence to support a claim of disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). One district court explained the connection between the claimant's burden and the ALJ's duty as follows:

> Although the burden of proof is on the claimant to prove disability, the ALJ is under a duty to conduct a full and fair inquiry into all the matters at issue. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. 1981). Thus, in general, the claimant has the burden of obtaining his medical records and proving that he is disabled. 20 C.F.R. § 404.1512(a) and (c). On the other hand, the Commissioner (ALJ) has the responsibility to make every reasonable effort to develop the claimant's complete medical history, for at least the twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d).

*Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1372 (N.D. Ga. 2006). Thus, although a claimant has the burden of providing her medical records to support her claim of disability, the ALJ must take reasonable steps to develop the claimant's complete medical history for at least the twelve months prior to the month the application was filed. Other courts have indicated that an ALJ's "duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Reed v. Astrue*, No. 11-00376-B, 2012 WL 4497635 at *6 (S.D. Ala. Sept. 28, 2012). *See also Evans-Ponio ex.rel. T.J. v. Astrue*, No. 8:08-cv-1363-T-24HTS, 2009 WL 2242627 at *2 (M.D. Fla. July 27, 2009) (stating that remand is not warranted when the claimant merely speculates that additional evidence might have been obtained) (quoting *Johnson v. Chater*, 969 F. Supp. 493, 508 (N.D. Ill. 1997)).

When a social security claimant appears pro se and does not waive her statutory right to representation, the ALJ's duty to develop a full and fair record rises to a special duty that requires scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts. *Id.* at 934-35 (quoting *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982)). A claimant who asserts that the ALJ violated his duty to develop a full and fair record must show "prejudice before we will find that the claimant's right to due process has been violated to such a

degree that the case must be remanded to the [Commissioner] for further development of the record." *Id.* at 935.

Demonstrating prejudice requires "showing that the ALJ did not have all of the relevant evidence before him in the record, or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (internal parenthetical omitted). In determining the necessity for remand, the court is guided by whether the "'record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown*, 44 F.3d at 935 (quoting *Smith*, 677 F.2d at 830).

In *Brown*, 44 F.3d at 932-33, the claimant executed a written waiver of representation at the hearing, but, when questioned, expressed confusion about her right to have representation and indicated a desire to have the assistance of her former supervisor. Ultimately appearing pro se, the claimant testified that she visited her treating doctor twice just prior to the hearing and that she had been undergoing rehabilitation therapy. *Id.* at 935. Despite stating that he would obtain updated records from the treating doctor and rehabilitation center, the ALJ did not obtain the records. *Id.*

In light of the claimant's confusion and expressed desire to be represented by a former supervisor, the Eleventh Circuit determined that the claimant did not knowingly and voluntarily waive her right to representation. *Id.* As a result, the ALJ had a special duty to develop the record. The Eleventh Circuit concluded that the ALJ did not fulfill his duty to develop the record, stating:

> The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits. We have no way of knowing whether the evidence missing from this case would sustain Brown's contentions of her inability to work. In the absence of proof to the

contrary, however, we must assume that it does lend credence to
her allegations.

*Id.* at 935-36.  Thus, the Eleventh Circuit found that the ALJ failed to develop the record because

he did not obtain updated medical and vocational records, despite stating he would, and these

records created an evidentiary gap that the court presumed would support the claimant's

allegations of disability.  Accordingly, the Eleventh Circuit concluded that the ALJ did not fulfill

his special duty to develop a full and fair record because the claimant did not validly waive her

right to representation, the ALJ failed to obtained medical records after promising to do so and

prejudice resulted based on a presumption that the missing medical records were supportive of

claimant's allegations of disability.  *Id.* at 936.

In *Robinson v. Astrue*, 235 F. Appx. 725, 727 (11th Cir. 2007), the claimant knowingly

and voluntarily waived his right to representation.[3]  The ALJ instructed the claimant to provide

certain missing medical records within fifteen days of the hearing.  *Id.* at 726-727.  The claimant

did not provide those records, instead producing other records dated after the hearing.  *Id.* at 727.

The Eleventh Circuit rejected the claimant's argument that the ALJ failed to fully and fairly

develop the record by ordering him to produce the records, instead of obtaining them himself.

*Id.* at 726-727.  The Eleventh Circuit distinguished *Brown* on the basis that the ALJ in *Robinson*

never stated he would acquire missing medical records that existed.  *Id.* at 727.  After noting that

claimant bore the ultimate burden of producing supporting evidence, the Eleventh Circuit stated

that the claimant "still has not produced records from the relevant time period."  *Id.*  Based on

---

[3]  Unpublished Eleventh Circuit opinions are persuasive, not binding, authority.

the record summarized above, the Eleventh Circuit determined that the ALJ fulfilled his duty to fully and fairly develop the record.[4]

In *Henderson v. Commissioner of Social Security*, 353 F. Appx. 303, 304-05 (11th Cir. 2009), the claimant argued that the ALJ failed to develop a full and fair record by failing to obtain an updated mental RFC assessment.  The Eleventh Circuit rejected this argument because the claimant did "not explain how the absence of a mental RFC assessment from the record precluded the ALJ from making an informed disability determination.  Nor does she explain how such an assessment would have affected the ALJ's overall disability determination." *Id.* at 305. Accordingly, the claimant failed to show the requisite prejudice and the Eleventh Circuit affirmed.  Thus, in *Henderson*, the Eleventh Circuit required the claimant to explain how the missing medical evidence prevented the ALJ from making an informed decision or affected the ALJ's overall disability determination in order to establish prejudice.  *See id.*  The undersigned finds the reasoning of *Robinson* and *Henderson* to be persuasive in cases where a claimant has clearly and unequivocally waived the right to counsel.

*Brown*, *Robinson* and *Henderson* provide several guiding principles in determining whether an ALJ has breached his duty to fully and fairly develop the record.  If a claimant has not waived her right to representation, has testified to receiving recent medical treatment that is not part of the record, and the ALJ promises to obtain the treatment records but does not do so, then the Court presumes the missing medical records support the claimant's claims of disability and the ALJ fails to fulfill his special duty to develop a full and fair record by not obtaining the medical records.  *See Brown*, 44 F.3d at 935-36.  However, if a claimant waives her right to representation and the claimant does not produce medical records after being directed to do so,

---

[4]  The Eleventh Circuit also noted that the ALJ's decision could have been postponed if the claimant had informed the ALJ that he needed additional time to obtain the medical records.  *Robinson*, 235 F. Appx. at 727.

then the ALJ fulfills his duty to develop a full and fair record.  *See Robinson*, 235 F. Appx. at 727.  Finally, in order to establish prejudice as a result of the ALJ's failure to fully and fairly develop the record, the claimant must explain how the missing medical evidence prevented the ALJ from making an informed decision or affected the ALJ's overall disability determination. *See Henderson*, 353 F. Appx. at 305.

Claimant contends the ALJ failed to develop the record with regard to her testimony that she has had multiple breast reconstruction surgeries from March through September 2010, she underwent an MRI the day before the hearing due to abdominal pain caused by her breast reconstruction surgeries and an appointment with an oncologist was scheduled for September 6, 2010.  Doc. No. 17 at 7.  Claimant asserts that the ALJ failed to ask follow up questions or obtain up-to-date medical records regarding this testimony.  Doc. No. 17 at 7-8.  Claimant summarily contends that she has been prejudiced by the ALJ's failure to develop a full and fair record.  Doc. No. 17 at 8.

In this case, the ALJ only had a basic duty to develop the record because Claimant unequivocally waived her right to representation (*see* R. 30).  *See Brown*, 44 F.3d at 934.[5]  The ALJ did not fail to obtain missing medical records after promising to do so.  As a result, *Brown* is distinguishable and the Court will not presume that the missing medical records support Claimant's allegations of disability.  *See id.* at 935-36.

Because the ALJ only had a basic duty to develop the record, Claimant bears the ultimate burden of presenting evidence to support her allegations of disability.  *See Robinson*, 235 F. Appx. at 727.  Although the ALJ in this case did not direct Claimant to produce the missing medical records, Claimant also did not request the ALJ grant her additional time to provide them.

---

[5] Claimant concedes that she waived the right to representation and chose to represent herself at the hearing.  Doc. No. 17 at 7.

Nor has Claimant attempted to provide the missing medical records to the Appeals Council or otherwise attempted to supplement the record. *See Ford v. Astrue*, No. 3:09-cv-00688-J-JBT, 2011 WL 611661 at *1, 3 (M.D. Fla. Feb. 11, 2011) (ALJ failed to fully and fairly develop the record where court determined that treatment records which were submitted to the Appeals Council, after ALJ refused to hold the record open to allow claimant to supplement the record, were relevant and supportive of claimant's allegations of disability). Consequently, Claimant has not sustained her burden of producing evidence to support her claim of disability.

Furthermore, Claimant does not indicate how her testimony or the missing medical records support her allegations of disability. Other than her conclusory statement of prejudice, Claimant does not demonstrate how additional testimony or medical records are relevant and supportive of her claim of disability. *See Henderson*, 353 F. Appx. at 305.

As set forth above, Claimant unequivocally waived her right to counsel, the ALJ did not fail to obtain the medical records after promising to do so, Claimant failed to meet her burden of presenting evidence to support her claim of disability and Claimant has failed to demonstrate prejudice. *See Robinson*, 235 F. Appx. at 727; *Henderson*, 353 F. Appx. at 305.[6] Accordingly, the Court, consistent with *Robinson* and *Henderson*, concludes that the ALJ fulfilled his duty to fully and fairly develop the record.

### B. The ALJ's Failure to State the Weight Given to Dr. Nieves-Quinones and Dr. Barber's opinions was Harmless Error.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is

---

[6] Although the ALJ in *Robinson*, 235 F. Appx. 726, directed the claimant to provide missing medical records, the basis of the Eleventh Circuit's decision in *Robinson* was not decided on the propriety of the ALJ instructing the claimant to submit the missing records. Rather, the basis for the Eleventh Circuit's decision was that the claimant "bore the ultimate burden of producing evidence in support of his claim." *Id.* at 727.

required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion <u>requiring the ALJ to state with particularity the weight given to it and the reasons therefor</u>.  *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"  *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).  *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

In *Winschel*, the Commissioner argued that the ALJ did not err by failing to state the weight he gave to a treating physician's treatment notes and the reasons therefor because they did not constitute an "opinion."  *Id.* at 1178-79.  The Eleventh Circuit disagreed because the treatment notes contained "a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions.'"  *Id.* (*quoting* 20 C.F.R. §§

404.1527(a)(2), 416.927(a)(2)).   Thus, the treating physician's treatment notes constituted an opinion.  *Id.*   The Eleventh Circuit reversed stating that "[i]t is possible that the ALJ considered and rejected these . . . medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."  *Id.*

An ALJ's failure to state the weight given to a doctor's opinion can constitute harmless error when the correct application of the regulations would not contradict the ALJ's ultimate findings.  *Wright v. Barnhart*, 153 F. Appx. 678, 684 (11th Cir. 2005).   In *Wright*, 153 F. Appx. at 684, the ALJ did not state the weight given to several doctors who opined that the claimant suffered from chronic pain or conditions associated with chronic pain.   The Eleventh Circuit found this error to be harmless because none of the doctors' opinions "directly contradicted" the ALJ's finding that Claimant could perform sedentary work.  *Id.*   In *Caldwell v. Barnhart*, 261 F. Appx. 188, 190 (11th Cir. 2008), the ALJ failed to state the weight given to a consultative examining doctor, who opined that the claimant could only occasionally work around fumes, odors, dust, mists, gasses, poor ventilation or moving mechanical parts.   The Eleventh Circuit found this error to be harmless because none of these limitations affected the claimant's ability to perform the job of production assembler, which the vocational expert testified the claimant could perform, as that job does not require exposure to moving parts, humidity, atmospheric conditions, toxic chemicals or other environmental conditions.  *Id.*

The ALJ did not state the weight he gave to the opinions of Drs. Barber or Nieves-Quinones.   Claimant argues that the ALJ's failure to state the weight given to Dr. Barber's opinion is reversible error because "Dr. Barber's opinion clearly conflicts with the ALJ's RFC assessment as it fails to address Dr. Barber's opinions that [Claimant] cannot kneel, crawl, or

squat." Doc. No. 17 at 10. The ALJ determined that Claimant can perform her past relevant work as a cashier office clerk based on his RFC determination and the vocational expert's testimony. R. 47-48. Although the ALJ's RFC determination conflicts with Dr. Barber's opinion that Claimant cannot kneel, crawl or squat (R. 374), the job of cashier office clerk does not require kneeling, crawling, squatting or stooping. *See* Department of Labor, *Dictionary of Occupational Titles*, 211.462-026 (4th ed. 1991). As a result, the ALJ's failure to state the weight given to Dr. Barber's opinion is harmless because these limitations do not affect Claimant's ability to work as cashier office clerk. *See Caldwell*, 261 F. Appx. at 190 (error to state weight given to consultative examining doctor harmless when limitations identified by the doctor did not affect the claimant's ability to perform one of the jobs the vocational expert testified the claimant could perform).

Claimant argues that the ALJ failed to state the weight given to Dr. Nieves-Quinones' opinion that Claimant suffers from cervicogenic headaches and failed to inquire or include any nonexertional limitations resulting from her cervicogenic headaches. Doc. No. 17 at 11-12. The ALJ's failure to state the weight given to Dr. Nieves-Quinones' opinion that Claimant suffers from cervicogenic headaches is harmless because the ALJ found that one of Claimant's severe impairments is cervicogenic headaches. Dr. Nieves-Quinones did not indicate that Claimant's cervicogenic headaches impose any limitations on her and Claimant does not point to any record evidence that indicates her cervicogenic headaches impose any limitations. Claimant has the burden to establish that she cannot perform her past work due to a physical or mental impairment. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Because Dr. Nieves-Quinones did not opine that Claimant's cervicogenic headaches impose any limitations on her,

the ALJ did not err in failing to find or include nonexertional limitations in determining Claimant's RFC.

### C.  The ALJ did not Err in Failing to Elicit or Consider Medication Side Effects.

Claimant argues that the ALJ failed to elicit any testimony or consider the side effects she experiences while taking Tramadol.  Doc. No. 17 at 13-14.[7]  Claimant lists the possible side effects of Tramadol and speculates that if she suffers "from any of these side effects, they could most certainly render her 'disabled or at least contribute to a disability.'"  Doc. No. 17 at 13. However, Claimant did not testify that she experiences any side effects from Tramadol even though the ALJ repeatedly asked Claimant about her impairments.  R. 36-42.  Dr. Nieves-Quinones, the prescribing doctor, did not indicate that Claimant suffers any side effects.  *See* R. 239-40, 244-45, 360-61.  Claimant does not point to any medical evidence that even suggests she suffers from any side effects as a result of taking Tramadol.  *See* Doc. No. 17 at 13-14. Therefore, the ALJ did not err in failing to elicit testimony or address the side effects of Claimant's medication.  *See Walker v. Comm'r of Soc. Sec.*, 404 F. Appx. 362, 367 (11th Cir. 2010) (ALJ not required to elicit further testimony about claimant's medication side effects when claimant did not testify the side effects were so severe as to be disabling and there was no medical evidence to support such a finding).

### V.    CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1.    The final decision of the Commissioner is **AFFIRMED**; and

---

[7]  On her supplemental pain questionnaire, dated March 25, 2010, Claimant indicated that she takes ibuprofen, Keflex for her breast surgery and Dilaudid for pain.  R. 168.  Claimant stated that she experiences constant nausea and vomiting from Keflex and that her pain medications give her allergies such as flushing, swelling and looking like she has hives.  R. 168.  On her "Disability Report – Appeal," dated September 8, 2010, Claimant indicated that she was prescribed Amoxicillin, Hideromorthone and Lorazepam, and did not experience any side effects.  R. 206. Claimant does not assert that any of these medications cause disabling side effects and, at the hearing, Claimant testified that she is only taking Tramadol.  R. 39.  Accordingly, the Court does not address the side effects of these other medications.

2.     The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE and ORDERED** in Orlando, Florida on February 14, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr.
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Christopher Harris, Branch Chief
Avni Gandhi, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Douglas A. Walker
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224